UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

THE CINCINNATI INSURANCE
COMPANY, a Foreign Corporation,

        Plaintiff,                Case No.:

v.

GC WORKS INC., a Florida Corporation,
and LANCE D. WAYNE, individually,

        Defendants.

_____/

## COMPLAINT

Plaintiff, THE CINCINNATI INSURANCE COMPANY ("CIC"), through its counsel, hereby sues Defendants, GC WORKS INC. ("GC Works") and LANCE D. WAYNE ("Wayne"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.      This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendants are citizens of diverse states.

2.      CIC is an Ohio corporation incorporated in Ohio with its principal place of business in Fairfield, Ohio making it a citizen of Ohio in accordance with 28 U.S.C. § 1332(c)(1).  CIC is licensed to conduct business in Florida.

3.      Upon information and belief, GC Works is a corporation incorporated in Florida with is principal place of business in Miami, Florida, in Miami-Dade County, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

4.      Upon information and belief, Wayne is a resident of, and domiciled in, Miami, Florida, in Miami-Dade County, making him a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

Case 1:21-cv-21159-MGC   Document 1   Entered on FLSD Docket 03/26/2021   Page 2 of 10

5.      The causes of action alleged herein fall within the jurisdictional limits of the Court because CIC seeks to recover more than $75,000.00 from the Defendants.

6.      Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Southern District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Miami Division of this Court.

## GENERAL ALLEGATIONS

### The Indemnity Agreement

7.      As part of its business, CIC issues payment and performance bonds and stands as surety for selected contractors.

8.      In connection with its work, GC Works, from time to time, required surety payment and performance bonds.

9.      To induce CIC to issue payment and performance bonds on their behalf, Defendants jointly and severally entered into an indemnity agreement with CIC.

10.     Specifically, on November 17, 2017, GC Works and Wayne (collectively, the "Indemnitors") each executed an Agreement of Indemnity (the "Agreement") in favor of CIC, its affiliates, and its agents.  A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit "A."**

11.     The execution of the Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to CIC issuing any bonds naming one or more of the Indemnitors as a principal.

12.     According to the Agreement, the Indemnitors agreed, in part, to:

> [E]xonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and expenses of whatsoever

kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which the Surety may sustain or incur: (i) by reason of having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of the Undersigned to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement. The Surety may pay or compromise any claim, demand, suit, judgment or expense arising out of such Bond or Bonds and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this Indemnity Agreement.

[Exhibit A, p. 1, SECOND].

13. Additionally, the Indemnitors agreed:

The Surety may pay or compromise any claim, demand, suit, judgment or expense arising out of any Bond or Bonds and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this Indemnity Agreement, provided the same was made by the Surety in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all circumstances.

[Exhibit A, p. 4, SIXTEENTH].

14. Finally, the Indemnitors promised:

The Undersigned agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its Obligee and Beneficiaries under its Bond or Bonds.

[Exhibit A, p. 4, SEVENTEENTH].

15. The Agreement is unequivocal and specific in setting forth the Indemnitors'

obligations to indemnify and keep CIC indemnified "from and against any and all liability for

losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel,

and against any and all said losses and expense which the Surety may sustain or incur" as a result

of executing the payment and performance bonds or because of the Indemnitors' failure to comply

with the Agreement.

16.     CIC agreed to issue payment and performance bonds naming GC Works as principal at the Indemnitors' request in consideration for their promise to comply with the terms of the Agreement.

<u>**The Project, Bond, and Litigation**</u>

17.     The Florida Department of Transportation ("FDOT") contracted with GC Works to perform general contracting services on FDOT Financial Project No. 428290-2-72-01, located in Miami-Dade County, Florida (the "Project").

18.     At the Indemnitors' request, CIC issued bond number B-2794909 (the "Bond") for the Project naming GC Works as principal.

19.     GC Works subcontracted with A & M Brothers Concrete Corp. ("A&M") for A&M to perform certain subcontractor services on the Project.

20.     Disputes arose on the Project between GC Works and A&M.

21.     GC Works sued A&M seeking damages for A&M's alleged abandonment of the Project.

22.     In response, A&M countersued, naming GC Works and CIC as counter-defendants.

23.     In its countersuit, A&M demanded that CIC pay damages under the Bond for GC Works' failure to fully pay A&M for labor, services, and materials provided to the Project.

24.     CIC tendered its defense to GC Works.

25.     On April 25, 2019, a jury awarded $17,500.00 in damages to A&M and against GC Works and CIC.

26.     On November 8, 2019, the court awarded $207,637.27 in attorneys' fees, costs, and prejudgment interest to A&M and against GC Works and CIC.

27.     On April 17, 2020, A&M, GC Works, and CIC entered a Settlement Agreement and Release (the "Settlement Agreement"), wherein CIC agreed to pay A&M $270,000.00 (the "Settlement Funds") in exchange for full and final settlement of the claims against CIC and GC Works.

28.     By paying the Settlement Funds, CIC incurred losses as a result of issuing the Bond.

## The Promissory Note

29.     To reimburse CIC for its losses (including the payment of the Settlement Funds to A&M), the Indemnitors executed a Demand Promissory Note (the "Note") in favor of CIC. A true and correct copy of the Note is attached hereto and incorporated herein as **Exhibit "B."**

30.     In the Note, the Indemnitors agreed to pay CIC a total of $264,000.00 plus interest.

31.     The principal balance due on the Note and all accrued interest is payable on demand. [Exhibit B, p. 1, ¶ 1].

32.     The Note sets forth a payment schedule with a due date and amount of each payment over a period of approximately three and one-half years.

33.     So long as the Indemnitors made each payment by the date specified in the Note, CIC agreed not to demand payment of the entire principal balance. [Exhibit B, p. 1, ¶ 3].

34.     In the Note, the Indemnitors agreed:

> Any failure of Indemnitors to comply with any term, covenant, or condition of this Note, including without limitation, Indemnitors' failure to pay principal and interest according to the above payment schedule or upon demand, such default shall be deemed, at the option of Payee, a "Default" under this Note. . . .
>
> Upon the occurrence of a Default hereunder, whether by failure of payment or performance of any other obligation of Indemnitors under the terms of this Note, Payee may declare the then outstanding principal and all accrued but unpaid interest immediately due and payable and upon acceleration and thereafter this Note shall bear interest at the Default Rate, hereinafter defined, until all

indebtedness evidenced hereby has been paid in full. Further, in the event of such acceleration, the Note, and all other indebtedness of Indemnitors to Payee arising out of or in connection with the Note shall become immediately due and payable.

After default or maturity or upon acceleration and thereafter, the unpaid indebtedness then evidenced by this Note shall bear interest at a fixed rate equal to the lesser of: (a) the maximum rate then permitted under applicable law, or (b) eighteen percent (18%) per annum.

If this Note is not paid upon demand, Indemnitors will pay to Payee, in addition to principal, interest and other charges due hereunder all costs of collection or enforcement, including reasonable attorneys' fees, paralegals' fees, legal assistants' fees, costs and expenses, whether incurred with respect to collection, litigation, bankruptcy proceedings, interpretation, dispute, negotiation, trial, appeal, defense of actions instituted by a third party against Payee arising out of or related to the Note, enforcement of any judgment based on this Note, or otherwise, whether or not a suit to collect such amounts or to enforce such rights is brought or, if brought, is prosecuted to judgment.

[Exhibit B, p. 2-3, ¶ 4-7].

35.    The Indemnitors failed to make payments on the Note on time.

36.    On March 9, 2021, CIC declared the Indemnitors in Default of the Note.

37.    CIC has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Note, or has been excused from doing so by the Indemnitors.

38.    The Indemnitors have not reimbursed CIC for the losses CIC has incurred as a result of issuing the Bond.

39.    CIC has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

40.    All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
### (Breach of Contract / Contractual Indemnity against the Indemnitors)

41.      CIC realleges and incorporates the allegations in paragraphs 1 through 28, and 38 through 40, as if fully set forth herein.

42.      Pursuant to the Agreement, the Indemnitors promised to "exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which the Surety may sustain or incur" by reason of, among other things, having executed the Bond or enforcing the Agreement.

43.      The Indemnitors have committed various breaches and defaults of the Agreement, including, but not limited to, failing and refusing to indemnify CIC from any and all liability for losses and expenses that CIC incurred, of whatsoever kind or nature, relating to A&M's Bond claim.

44.      As a result of the Indemnitors' breaches of the Agreement, CIC has suffered the following damages (collectively, the "Indemnity Damages"):

a.   $270,000.00 in payments to A&M,

b.   Less $21,337.31 CIC received from the Court registry upon Settlement with A&M, and

c.   $18,036.60 in attorneys' fees and costs as of the date of this Complaint.

45.      CIC's Indemnity Damages total $266,699.29 as of the date of this Complaint.

46.      CIC's Indemnity Damages are continuing in nature because the attorneys' fees and costs continue to accrue.

47.      CIC is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement.

WHEREFORE, CIC demands judgment against the Indemnitors, jointly and severally, for the Indemnity Damages in the amount of $266,699.29, costs of this action, prejudgment interest, attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT II
### (Common Law Indemnity against GC Works)

48.     CIC realleges and incorporates paragraphs 1 through 8, 17 through 28, and 38 through 40 as though fully set forth herein.

49.     CIC is without fault for A&M's claims.

50.     CIC had a special relationship with GC Works by virtue of issuing the Bond.

51.     CIC's liability under the Bond, if any, is merely technical, secondary, and vicarious to that of GC Works, who is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bond, including, without limitation, any liability to A&M.

52.     As a direct and proximate result of GC Works' failure to honor its obligations, CIC has incurred and continues to incur damages, losses and expenses, including attorneys' fees and costs, by reason of having executed the Bond.

53.     GC Works is liable to CIC for all losses, expenses, consultants' fees, and attorneys' fees sustained by reason of having executed the Bond including, without limitation, all payments CIC has made to investigate and defend A&M's claims and all consultants' fees and attorneys' fees CIC incurs as a result of issuing the Bond.

54.     To date, CIC has incurred the Indemnity Damages as a result of issuing the Bond.

55.     CIC's Indemnity Damages are continuing in nature because the attorneys' fees and costs continue to accrue.

56.     CIC is entitled to receive its reasonably incurred attorneys' fees pursuant to applicable Florida law.

WHEREFORE, CIC requests that this Court enter judgment against GC Works for the Indemnity Damages in the amount of $266,699.29, costs of this action, prejudgment interest, attorneys' fees, and such further relief as this Court deems just and proper.

**COUNT III**
**(Breach of Contract against the Indemnitors for Breach of Note)**

57.      CIC realleges and incorporates the allegations in paragraphs 1 through 40 as if fully set forth herein.

58.      Pursuant to the Note, the Indemnitors promised to pay CIC according to the payment schedule.

59.      The Indemnitors have committed various breaches and defaults of the Note, including, but not limited to, failing and refusing to make timely payments under the payment schedule.

60.      As a result of the Indemnitors' breaches of the Note, CIC has suffered the following damages (collectively, the "Note Damages"):

d.      $244,000.00 outstanding principal balance on Note,

e.      $22,860.00 in interest accrued on Note as of the date of this Complaint, and

f.      $18,036.60 in attorneys' fees and costs as of the date of this Complaint.

61.      CIC's Note Damages total $284,896.60 as of the date of this Complaint.

62.      CIC's Note Damages are continuing in nature because the attorneys' fees, costs, and interest continue to accrue.

63.      CIC is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Note.

WHEREFORE, CIC demands judgment against the Indemnitors, jointly and severally, for Note Damages in the amount of $284,896.60, costs of this action, prejudgment interest, attorneys'

fees, and such further relief as this Court deems just and proper.

*/s/ Nathan F. Diehl*
BRETT D. DIVERS, ESQ.
Florida Bar No. 973246
bdivers@mpdlegal.com
NATHAN F. DIEHL, ESQ.
Florida Bar No. 121082
ndiehl@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502

*Counsel for Plaintiff, The Cincinnati*
*Insurance Company*