**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-21159-COOKE/DAMIAN

THE CINCINNATI INSURANCE COMPANY,
*a foreign corporation*,

       Plaintiff,

vs.

GC WORKS INC., *a Florida corporation*, *et al.*,

       Defendants.

_____/

**REPORT AND RECOMMENDATION AS TO**
**PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT**

THIS CAUSE is before the Court on Plaintiff, The Cincinnati Insurance Company's ("Plaintiff"), Motion for Final Default Judgment against Defendant, GC Works, Inc., ("Defendant" or "GC Works") [ECF No. 9] (the "Motion"). This matter was referred to the undersigned for a Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge. [ECF No. 11]. *See* 28 U.S.C. § 636.

THIS COURT has considered Plaintiff's Motion and supporting documents, and the pertinent portions of the record, and held an evidentiary hearing on February 25, 2022. The Court observes that GC Works did not file a response to the Motion, and the time to do so has passed. For the following reasons, it is recommended that Plaintiff's Motion for Final Default Judgment [ECF No. 9] be granted in accordance with this Report and Recommendation.

## I.      PROCEDURAL POSTURE

On March 26, 2021, Plaintiff initiated the instant action against GC Works and Lance D. Wayne seeking damages for breach of an indemnity agreement and a demand promissory note executed by GC Works in favor of Plaintiff. [ECF No. 1]. GC Works was served with the Summons and Complaint on March 30, 2021 [ECF No. 6] and failed to respond. After GC Works failed to appear, Plaintiff moved for entry of default against GC Works [ECF No. 7], which the Clerk of Court subsequently entered on April 30, 2021 [ECF No. 8]. Plaintiff now moves for entry of final default judgment solely against GC Works[1] as to Count III of the Complaint.[2] [ECF No. 9].

As of the date of this Report, GC Works has not responded to the Complaint, the Motion, nor any other filings in this case. Nor has an attorney made an appearance on its behalf.

## II.      BACKGROUND

### The Indemnity Agreement

As alleged in the Complaint, on November 17, 2017, GC Works and Lance Wayne (collectively, the "Indemnitors") executed an Agreement of Indemnity (the "Agreement") in favor of Plaintiff, its affiliates, and its agents. [*See* ECF No. 1 ("Complaint") ¶¶ 7–10; *see also* ECF No. 9-1 ("Fox Aff. in Supp. of Mot.") ¶ 7]. A copy of the Agreement is attached to the

---

[1] Plaintiff's Motion does not seek entry of a default final judgment against the other named defendant, Lance Wayne, who has not been served and is, therefore, not included in the Motion. At the hearing, Plaintiff's counsel confirmed that the Motion does not pertain to Mr. Wayne.

[2] As discussed below, the remaining Counts against GC Works were pled in the alternative and, therefore, Plaintiff only seeks judgment as to Count III in the Motion.

Complaint. [ECF No. 1-1, Ex. "A"]. Pursuant to the Agreement, the Indemnitors agreed, in

relevant part, to:

> [E]xonerate, indemnify and keep indemnified [Plaintiff] from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which [Plaintiff] may sustain or incur: (i) by reason of having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of the [Indemnitors] to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement. [Plaintiff] may pay or compromise any claim, demand, suit, judgment or expense arising out of such Bond or Bonds and any such payment or compromise shall be binding upon the [Indemnitors] and included as a liability, loss or expense covered by this Indemnity Agreement.
>
> * * *
>
> [Plaintiff] may pay or compromise any claim, demand, suit, judgment or expense arising out of any Bond or Bonds and any such payment or compromise shall be binding upon the [Indemnitors] and included as a liability, loss or expense covered by this Indemnity Agreement, provided the same was made by [Plaintiff] in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all circumstances.
>
> * * *

Additionally, the Agreement provides:

> The [Indemnitors] agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of [Plaintiff] is construed toward its Obligee and Beneficiaries under its Bond or Bonds.

[Compl., ¶¶ 11–14; Ex. "A"].

The Agreement clearly sets forth the Indemnitors' obligations to indemnify and keep

Plaintiff, as the surety, indemnified "from and against any and all liability for losses and

expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and

against any and all said losses and expense which the Surety may sustain or incur" as a result

of issuing the payment and performance bonds or because of the Indemnitors' failure to

3

comply with the Agreement. Plaintiff agreed to issue payment and performance bonds naming GC Works as principal at the Indemnitors' request in consideration for GC Works' promise to comply with the terms of the Agreement. [Compl. ¶¶ 15–16; *see also* Fox Aff. in Supp. of Mot. ¶¶ 7–10].

<u>The Project, Bond, and Litigation</u>

Plaintiff alleges the Florida Department of Transportation ("FDOT") contracted with GC Works to perform general contracting services on FDOT Financial Project No. 428290-2-72-01 in Miami-Dade County, Florida (the "Project"). At the Indemnitors' request, Plaintiff issued bond number B-2794909 (the "Bond") for the Project naming GC Works as principal. GC Works subcontracted with A & M Brothers Concrete Corp. (the "Subcontractor") to perform certain subcontractor services at the Project. Disputes arose between GC Works and the Subcontractor regarding the Project. [Compl. ¶¶ 17–20; Fox Aff. in Supp. of Mot. ¶ 11].

The Complaint further alleges that, consequently, GC Works sued the Subcontractor for the Subcontractor's alleged abandonment of the Project. In response, the Subcontractor countersued naming GC Works and Plaintiff as counter-defendants. In the countersuit, the Subcontractor demanded that Plaintiff pay damages under the Bond for GC Works' failure to fully pay the Subcontractor for labor, services, and materials provided at the Project. Plaintiff tendered its defense to GC Works. [Compl. ¶¶ 21–24].

As set forth in the Complaint, on April 25, 2019, a jury awarded $17,500.00 in damages to the Subcontractor and against GC Works and Plaintiff. Thereafter, on November 8, 2019, the trial court awarded $207,637.27 in attorney's fees, costs, and prejudgment interest to the Subcontractor and against GC Works and Plaintiff. On April 17, 2020, the Subcontractor, GC Works, and Plaintiff entered into a Settlement Agreement and Release,

wherein Plaintiff agreed to pay the Subcontractor $270,000.00 (the "Settlement Funds") in exchange for full and final settlement of the claims against Plaintiff and GC Works. Plaintiff alleges that by paying the Settlement Funds, it incurred losses due to issuing the Bond. [Compl. ¶¶ 25–28; Fox Aff. in Supp. of Mot. ¶¶ 12–14].

The Promissory Note

To reimburse Plaintiff for its losses (including the payment of the Settlement Funds to the Subcontractor), the Indemnitors executed a Demand Promissory Note (the "Note") in favor of Plaintiff. [Compl. ¶ 29; Fox Aff. in Supp. of Mot. ¶ 15]. A copy of the Note is attached to the Complaint. [ECF No. 1-2, Ex. "B"]. Pursuant to the Note, the Indemnitors agreed to pay Plaintiff the principal sum of $264,000.00 plus interest. The principal balance due on the Note and all accrued interest is payable on demand. The Note sets forth a payment schedule with a due date and amount of each payment over a period of approximately three and one-half years. So long as the Indemnitors made each payment by the date specified in the Note, Plaintiff agreed not to demand payment of the entire principal balance. [Compl. ¶¶ 30–33; Fox Aff. in Supp. of Mot. ¶ 16].

The Indemnitors agreed to the following provisions under the Note:

> Default. Any failure of Indemnitors to comply with any term, covenant, or condition of this Note, including without limitation, Indemnitors' failure to pay principal and interest according to the above payment schedule or upon demand, such default shall be deemed, at the option of Payee, a "Default" under this Note.

> Acceleration. Upon the occurrence of a Default hereunder, whether by failure of payment or performance of any other obligation of Indemnitors under the terms of this Note, Payee may declare the then outstanding principal and all accrued but unpaid interest immediately due and payable and upon acceleration and thereafter this Note shall bear interest at the Default Rate, hereinafter defined, until all indebtedness evidenced hereby has been paid in full. Further, in the event of such acceleration, the Note, and all other

5

indebtedness of Indemnitors to Payee arising out of or in connection with the Note shall become immediately due and payable.

<u>Default Rate</u>. After default or maturity or upon acceleration and thereafter, the unpaid indebtedness then evidenced by this Note shall bear interest at a fixed rate equal to the lesser of: (a) the maximum rate then permitted under applicable law, or (b) eighteen percent (18%) per annum.

<u>Expenses</u>. If this Note is not paid upon demand, Indemnitors will pay to Payee, in addition to principal, interest and other charges due hereunder all costs of collection or enforcement, including reasonable attorneys' fees, paralegals' fees, legal assistants' fees, costs and expenses, whether incurred with respect to collection, litigation, bankruptcy proceedings, interpretation, dispute, negotiation, trial, appeal, defense of actions instituted by a third party against Payee arising out of or related to the Note, enforcement of any judgment based on this Note, or otherwise, whether or not a suit to collect such amounts or to enforce such rights is brought or, if brought, is prosecuted to judgment.

[Compl. ¶ 34, Ex. B, at 2–3; *see also* Fox Aff. in Supp. of Mot. ¶ 17].

In the Complaint, Plaintiff alleges the Indemnitors failed to make the specified payments on the Note on time. On March 9, 2021, Plaintiff declared the Indemnitors in default of the Note. Plaintiff alleges that it has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Note or has been excused from doing so by the Indemnitors. Plaintiff further alleges that the Indemnitors have not reimbursed Plaintiff for the losses Plaintiff has incurred due to issuing the Bond. [Compl. ¶¶ 35–40; Fox Aff. in Supp. of Mot. ¶¶ 18–21].

Accordingly, Plaintiff seeks a final default judgment on Count III of its Complaint, which alleges breach of the Note, against GC Works.[3] Specifically, in the Complaint, Plaintiff asks for damages in the principal amount of $244,000.00, plus $22,860.00 in interest accrued

---

[3] As indicated above, Plaintiff only seeks final default judgment as to Count III (Breach of the Note), whereas Count I (Breach of the Agreement) and Count II (Common Law Indemnity) were pled in the alternative to Count III. [Mot., at 9 n.2].

on the Note as of date of the Complaint, and $18,036.60 in attorney's fees and costs as of the filing of the Complaint, for a total damages award of $284,896.60. [Compl. ¶¶ 58–63]. In its Motion and supporting affidavit, however, Plaintiff requests damages totaling $272,344.18, which includes $244,000.00 as principal under the Note, plus $10,308.18 in default interest as of June 8, 2021, and $18,036.60 in attorney's fees and costs as of the date of the Complaint. [Mot. ¶¶ 61–65; Fox Aff. in Supp. of Mot. ¶¶ 22–26].

On February 23, 2022, Plaintiff filed the Affidavit of Nathan F. Diehl, Plaintiff's counsel, in Support of the Motion for Final Default Judgment. [ECF No. 15 ("Diehl Aff. in Supp. of Mot.")]. In the Diehl Affidavit, Plaintiff clarifies that the attorney's fees and costs it has incurred in this matter is $8,060.20, which does not include any fees incurred prior to Defendant's breach of the Note. Previously, Plaintiff's Motion had requested additional fees and costs incurred prior to the breach of the Note, which counsel now indicates was done in error. [*See id.* ¶ 8, n.2].

At the February 25, 2022, hearing on the Motion, Plaintiff, through counsel, explained that the Indemnitors made four payments in the total amount of $20,000.00 toward satisfaction of the Note. [*See also* Fox Aff. in Supp. of Mot. ¶¶ 22(a)]. Therefore, Plaintiff alleges a balance of $244,000.00 remains due on the principal amount of the Note. [*Id.*]

As indicated above, GC Works has not appeared or otherwise responded to the instant Motion, and the time for doing so has lapsed.

## III.   APPLICABLE LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by

affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *Surtain*, 789 F.3d at 1245. Thus, before entering a default judgment for damages, a court must ensure that the well-pleaded allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

Once liability has been established, the court must assess the damages sought by examining the affidavits submitted. *See, e.g.*, *Svetlick v. Lucius*, No. 08-61525, 2009 WL 1203925, at *1 (S.D. Fla. May 1, 2009) (awarding default final judgment as to "the precise amount of damages, including actual damages as well as liquidated damages" pursuant to the agreement between the parties). "Following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." *Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005)). A district court "may conduct hearings . . . when, to enter or effectuate [a default] judgment, it needs to: . . . determine the amount of damages, establish the truth of any allegation by evidence,

8

or investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion"). "After ascertaining the appropriate amount of damages, the Court must enter final judgment in that amount." *Fagan v. Central Bank of Cyprus*, No. 19-80239-CIV, 2021 WL 2845034, at *3 (S.D. Fla. June 28, 2021) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## IV.   DISCUSSION

With the foregoing in mind, the Court turns to the allegations in the Complaint and the contract at issue. Plaintiff moves for entry of a default judgment on its claim for breach of the Note. The Court will first address GC Works' liability to Plaintiff for purposes of entering final default judgment and then turn to ascertain the proper damages and fees award.

### A. Liability – Breach of the Note

The underlying Note is "governed by and construed in accordance with the laws of the State of Florida." [ECF No. 1-2, Ex. B, at 3]. "Under Florida law, an action for breach of a promissory note is the same as a breach of contract action." *Angelini v. Remasur USA, LLC*, No. 16-21290, 2018 WL 4410008, at *3 (S.D. Fla. May 25, 2018) (citations omitted). The elements of a breach of contract claim are (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). "Under Florida contract law, where the contract terms are clear and unambiguous, a court must give effect to the plain meaning of the terms." *National R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 422 F.3d 1275, 1284 (11th Cir. 2005) (citation omitted).

Here, Plaintiff alleged the following facts in Count III of the Complaint: (1) GC Works executed the Note in favor of Plaintiff, whereby GC Works promised to pay $264,000.00 plus interest pursuant to a payment schedule [Compl. ¶ 58]; (2) GC Works failed to make the required payments on time and thereby defaulted on the Note [*Id.* ¶ 59]; and (3) Plaintiff suffered damages for the principal amount due plus the unpaid interest required under the Note [*Id.* ¶¶ 60–61]. Plaintiff met its pleading obligations. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Therefore, the Court finds the substantive well-pleaded allegations of fact under Count III of Plaintiff's Complaint, which GC Works admits due to the default, show that Plaintiff is entitled to relief for breach of the Note.

## B. Damages

The Court next turns to Plaintiff's claim for damages and the basis therefore. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."). "Damages may only be awarded if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested." *Angelini*, 2018 WL 4410008, at *3 (citations omitted).

In the Complaint, filed March 26, 2021, Plaintiff seeks $266,860.00, which includes $244,000.00 as principal balance on the Note plus $22,860.00 in interest accrued as of the date of Complaint. [Compl. ¶ 60]. In the Motion, filed June 10, 2021, Plaintiff seeks $254,308.18, which includes $244,000.00 as principal under the Note, plus $10,308.18 in default interest as

of June 8, 2021. [Mot. ¶¶ 61]. Plaintiff submitted the Affidavit of Michael Fox, the Plaintiff's Secretary and Bond Claim Manager, in support of the Motion. [*See* Fox Aff. in Supp. of Mot.]. The Motion and the Fox Affidavit, together with the Note, show that GC Works agreed to make timely payments pursuant to the payment schedule and knew that failure to make such payments would result in a default under the Note. [ECF No. 1-2, Ex. B (the "Note")]. GC Works also agreed to pay default interest, at 18% per annum, on the unpaid principal under the Note. [*Id.* ¶ 6].

Based on the Note and supporting documents, this Court finds that Plaintiff has demonstrated entitlement to recover the principal sum of $244,000.00 under the Note plus prejudgment interest at a rate of $120.33 per day that accrued from March 9, 2021, the date GC Works defaulted, to the date the Court enters final default judgment (*i.e.*, calculated as: ($244,000.00 x 18%) / 365 days = $120.33 (default interest per day)).

### C. Attorney's Fees and Costs

Plaintiff also seeks to recover its attorney's fees and costs incurred in this litigation. Under the Note's definition of "Expenses," GC Works agreed to pay Plaintiff "in addition to principal, interest and other charges due . . . all costs of collection or enforcement, including reasonable attorneys' fees, paralegals' fees, legal assistants' fees, costs and expenses, whether incurred with respect to collection, litigation, . . . interpretation, dispute . . . arising out of or related to the Note . . ." [Note ¶ 7]. Under Florida law, which governs the terms of the Note, reasonable attorney's fees are considered unliquidated damages and require a hearing to determine the amount of fees to be awarded. *See Williams v. Skylink Jets, Inc.*, 229 So. 3d 1275, 1279 (Fla. 4th DCA 2017); *Kalb v. Sail Condo. Ass'n*, 112 So. 3d 674, 676 (Fla. 3d DCA 2013). Here, Plaintiff seeks $8,060.20 in attorney's fees and costs. [Diehl Aff. in Supp. of Mot. ¶¶ 8–

12].

### 1. Calculating Attorney's Fees – the Lodestar Method

In determining reasonable attorney's fees in cases where a party is entitled to reasonable fees under a contract, the Court looks to Florida state law, which adheres to the lodestar method as developed by federal case law. *See Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1147–48 (11th Cir. 1993). Under the lodestar method applied by courts in the Eleventh Circuit, attorney's fees are calculated by multiplying the number of hours reasonably spent times a reasonable hourly rate. *Id.* at 1147; *see also Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The plaintiff bears the burden of documenting reasonable hours expended and reasonable hourly rates. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Additionally, the plaintiff must provide detailed evidence of the hourly rates and time expended so that this Court may properly assess the time claimed for each activity. *Id.*

Therefore, the Court may review the hourly rate and attorney time for reasonableness based on the twelve so-called "*Johnson* factors," including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340–41 (11th Cir. 1999) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

12

a) <u>Reasonable Hourly Rate</u>

This Court must first determine whether the fee applicant has satisfied the burden of establishing that his requested hourly rate is reasonable. A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436. As for hourly rates, this Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

At the evidentiary hearing held before the undersigned on February 25, 2022, Plaintiff requested that the Court compensate Plaintiff's counsel, Nathan F. Diehl, an associate with the law firm Paskert Divers Thompson, at an hourly rate ranging from $209.00 and $219.00, and Brett D. Divers, a partner at same law firm, at an hourly rate of $268.00. In support of these rates, Plaintiff submitted the Affidavit of Nathan Diehl as to attorney's fees and costs prior to the hearing. In the Diehl Affidavit, Plaintiff states the requested rates are reasonable, usual, and customary for like services performed in this type of matter. [Diehl Aff. in Supp. of Mot. ¶¶ 5–6].

As previously mentioned, Plaintiff has the burden of establishing a reasonable rate. The Court, however, may turn to its own experience to determine reasonable hourly rates as well. Upon a review of the record, and the Court's consideration of other fee requests and awards in similar types of cases, the Court finds that Messrs. Diehl's and Divers' requested hourly rates, ranging from $209.00 to $268.00 for work performed in this matter, to be in the reasonable range of hourly rates for comparable services. In the Southern District of Florida,

13

hourly rates range from $150.00 to as much as $300.00 per hour for the representation of certain institutional clients. The undersigned notes that Plaintiff's counsel seeks compensation within the prevailing rate range. These rates, however, may be adjusted according to the number of years of experience that an attorney has. The undersigned concludes that Mr. Divers' services should be compensated at the requested rate of $268.00 per hour based on his experience and position as partner at the law firm. As for Mr. Diehl, an associate who has been practicing law for a little over six years, the undersigned recommends that Mr. Diehl be compensated at a rate of $219.00 per hour.

     b) <u>Reasonable Hours Expended</u>

The Court must next determine whether the number of hours spent on the matter by counsel is reasonable. Counsel must use "billing judgment" when requesting attorney's fees and must exclude "excessive, redundant, or otherwise unnecessary" hours from any fee petition, irrespective of their skill, reputation, or experience. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Barnes*, 168 F.3d at 427. Although the party requesting attorney's fees must submit evidence sufficient to allow the court to determine that the requested fees are reasonable, "'objections and proof' . . . concerning hours that should be excluded must be specific and 'reasonably precise.'" *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). In addition, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

Plaintiff requests fees for 34.7 hours of work by Messrs. Diehl and Divers, which Plaintiff contends is reasonable, usual, and customary for like services performed in this type of matter. [Diehl Aff. in Supp. of Mot. ¶ 9]. While a party has a right to attorney's fees incurred

in the successful prosecution of a claim, the courts have a corresponding duty to make sure that such award is reasonable. *See Hensley*, 461 U.S. at 433–34. The determination of the amount of fees to award is vested in the sound discretion of the Court. *See Arch Ins. Co. v. GC Works, Inc.*, No. 12-21260, 2013 WL 12181371, at *6 (S.D. Fla. Feb. 4, 2013).

The undersigned has independently and carefully reviewed the billing records submitted by Plaintiff to determine whether the amounts sought are reasonable. Based upon a review of the record as a whole, the undersigned concludes that the number of hours spent litigating this matter by Plaintiff's counsel is reasonable.

> c) Calculating the Lodestar and Making Adjustments

Upon a thorough review of the record, including counsel's billing records, the undersigned concludes that Plaintiff is entitled to recover the calculated lodestar total amount of $7,721.80, which represents 32.2 hours billed by Mr. Diehl at the hourly rate of $219.00, and 2.5 hours billed by Mr. Divers at the hourly rate of $268.00.

After calculating the lodestar method, the Court may apply an across-the-board reduction to the lodestar where "the plaintiff achieved only partial or limited success." *Hensley*, 461 U.S. at 436. The undersigned notes that, generally, courts that have reduced the lodestar due to a "partial or limited success" have reduced the lodestar only when the recovery was extremely limited in light of the plaintiff's original claim. *See, e.g., James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007). Here, however, if the Court adopts the undersigned's recommendation as to damages that Plaintiff should be awarded, Plaintiff will recover the full amount sought in the Complaint. Thus, no reduction on this basis is appropriate.

Therefore, based upon a determination of the reasonableness of the requested

attorney's fees and applying the lodestar rates to the hours devoted to this case as represented in the Diehl Affidavit, the undersigned concludes that Plaintiff is entitled to recover a total of $7,721.80 in attorney's fees for the work of Messrs. Diver and Diehl.

2. <u>Calculating Costs</u>

Because costs are available to Plaintiff based on the Note, the limitations placed on the availability of cost awards by 28 U.S.C. Section 1920 do not apply. *See Arch Ins.*, 2013 WL 12181371, at *6. The Diehl Affidavit also sets forth the costs incurred in this action: $402.00 for a filing fee and $7.40 for copy fees. Since GC Works failed to appear or otherwise object to the requested costs, and noting no restriction on the costs available to Plaintiff under the Note, the undersigned recommends awarding Plaintiff $409.40 in costs.

**V.    CONCLUSION**

Therefore, for the reasons stated above, the undersigned respectfully recommends that a final default judgment be entered in Plaintiff's favor.

**RECOMMENDATION**

Based on the foregoing, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Final Default Judgment [ECF No. 9] be **GRANTED** as follows:

1. A default judgment be entered in favor of Plaintiff, The Cincinnati Insurance Company, and against Defendant, GC Works, Inc., which consists of:

   (a) an award of $244,000.00 in damages based on the principal amount owed under the Note;

   (b) an award of prejudgment interest at the rate of 18% per annum, or $120.33 per day, that accrued from March 9, 2021, the date GC Works defaulted, to the date the Court enters final default judgment;

(c) an award of attorney's fees in the amount of $7,721.80; and

(d) and award of costs totaling $409.40.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 25th day of February 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record;
       GC Works, Inc., c/o Lance Wayne
       1820 SW 3rd Avenue
       Miami, Florida 33129